UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-20157-Civ-MOORE/McAliley

LUIS SUTHERLIN, MIRIAM SUTHERLIN,
JAIME SAIEH, AND MOISES SAIEH,
individually and as the beneficiaries of the
dissolved trust, JAMCE TRUST, and the
dissolved trust company, JAMCE
INVESTMENTS LTD.,

    Plaintiffs,

v.

WELLS FARGO & COMPANY, WELLS
FARGO BANK, N.A., FIRST UNION
BROKERAGE SERVICE, INC., and FIRST
UNION BANK & TRUST COMPANY
(CAYMAN) LTD.,

    Defendants.
_____/

## PLAINTIFFS' RESPONSE TO DEFENDANT WELLS FARGO'S MOTIONS TO DISMISS AND TO TRANSFER

Plaintiffs, Luis Sutherlin, et al., through undersigned counsel, hereby oppose Defendant Wells Fargo Bank, N.A.'s motion to dismiss [ECF No. 19] and motion to transfer [ECF No. 18] and state as follows:

### A. Response to Motion to Dismiss

### Introduction

The Plaintiffs' complaint states claims for breach of fiduciary duty, breach of third party beneficiary contractual rights under a trust agreement, fraudulent and negligent creation of bank accounts without authorization, conversion, negligence, breach of duty to defend, and breach of duty

to indemnify. As explained in the complaint, Defendant Wells Fargo violated its express and implied obligations arising from a trust it created for the benefit of the Plaintiffs and its duties as the custodian of funds entrusted to it.

In its motion to dismiss, Wells Fargo admits that on a motion to dismiss all allegations of the complaint must be accepted as true and that it does not seek to have its motion treated as one for summary judgment, *see* mtd 4 n. 3, but asserts—contrary to the allegations of the complaint—that its obligations as a bank or a trustee were so minimal that it did not need to provide notice of actions that it took in making funds owed to the Plaintiffs subject to garnishment, failing to correctly identify the location of the funds or their ownership, failing to even acknowledge its status as the trustee for a trust in whose name the funds had been held, and failing to provide correct information to the Plaintiffs so that they could protect themselves from Wells Fargo's actions.

Most importantly, Wells Fargo assumes facts not of record—such as suggesting a that it moved funds belonging to the Plaintiffs only in 2008 and implying that it actually moved the funds into the State of Florida, rather than outside Florida (and thus outside the jurisdictional limits of the garnishment court in the Middle District of Florida). Nevertheless, because "[a]ll facts set forth in a plaintiff's complaint are to be accepted as true" for purposes of a motion to dismiss, *see Snow v. DirecTV Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006)() (citing *Oxford Asset Mgmt, Inc. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)), Wells Fargo's failure to fully address relevant allegations of the complaint and its attempt to introduce or assume away additional relevant facts foreclose the relief ef seeks. Instead, review of the actual allegations of the complaint, including that Wells Fargo created—in

names and locations the bank still has not revealed—new accounts with monies belonging to the beneficiaries without so advising the beneficiaries, show that Wells Fargo's actions cannot be justified under an unfettered-discretion trustee theory or indeed any theory of trust responsibility. Wells Fargo's motion fails to state when it fabricated new accounts subject to garnishment, what names were used to create the accounts, whether the monies were actually in Florida so as to be subject to garnishment, and whether Wells Fargo deemed the trust and Wells Fargo's subsidiary's trustee role to still exist when the actions complained of occurred. Wells Fargo relies on a unreasonable reading of the complaint allegations and of the trust agreement, so as to hypothecate that it had literally no trust responsibilities at all.

Wells Fargo also ignores that the complaint alleged that Plaintiffs seek all agreements between the trustor and Wells Fargo and that Wells Fargo's duties arose not solely from its trust status, but also as a bank with an existing relationship with the trustor. The course of dealings and the practices of Wells Fargo as a trustee and fund custodian in a foreign country, along with other similar evidence to be sought in this case, will likely shed light on the meaning of the discretionary trustee management authority that Wells Fargo claims it exercised even after the trust itself was dissolved.

**Complaint Allegations Assumed to be True (paragraphs 1–68 of the complaint)**

Jamce Investments, Ltd. was a company formed by the Defendants, with First Union Bank and Trust Company (Cayman) Ltd. named as trustee in an October 1999 Deed of Trust (the "trust") by Abdala Saieh for the benefit of his wife and lineal descendants. The Deed of Trust provides, upon the death of Abdala Saieh, for dissolution of Jamce and liquidation and distribution to the beneficiaries, of all trust assets. Upon Abdala Saieh's death in October 2007, the trust was or should

3

have been liquidated and ownership of the property vested in the beneficiaries no later than the date on which the trust and trust company ceased to exist. Nevertheless, Wells Fargo continued to hold the trust assets under the name of the nonexistent company, Jamce Investments Ltd., even after the OFAC blocking order imposed in 2006 was fully lifted in January 2012. The delisting was published in the Federal Register and Wells Fargo was made aware of it.

Plaintiffs Luis Sutherlin, Miriam Sutherlin, and Jaime Saieh were never designated by OFAC, were never otherwise targets of any investigation by OFAC, and were never subject to an order by the government freezing or blocking their assets. The writs of garnishment and execution were obtained ex parte, after Wells Fargo gave private banking information to the Stansell party creditors without notifying the Plaintiffs. Wells Fargo has never notified the Plaintiffs of its provision of confidential banking information, nor provided a copy of the information that Wells Fargo turned over to the Stansell party creditors. The Plaintiffs do not even know whether Wells Fargo ever formed Jamce, as it was obligated to do under the Deed of Trust. Plaintiffs' counsel's review of the Cayman Islands corporate registry produced no results showing that any entity bearing the name *Jamce, Jamce Investments*, or *Jamce Investments Ltd.* ever existed.

The Deed of Trust provides for control of Jamce by Wells Fargo, but fails to state who would own the Jamce entity. The Deed of Trust clearly provides that in the event of Abdala Saieh's death, ownership of the trust assets reverts to the beneficiaries and that Jamce, as an entity, would cease to exist. Wells Fargo either never formed Jamce or otherwise dissolved Jamce without complying with the Trust Deed even in a formal sense. But as of no later than October 2007, Jamce no longer owned the assets held by Wells Fargo for the Plaintiffs.

Wells Fargo never notified the Plaintiffs that Jamce was dissolved, that its assets had been

4

removed from First Union Brokerage Service, Inc., or that it continued to hold or conduct transactions in assets that were designated for distribution to the Plaintiffs. Trust settlor Abdala Saieh enjoyed a relationship of trust and confidence with Wells Fargo. As trustee of the trust, WELLS Fargo owed a fiduciary duty to the trustor and to each of the trust beneficiaries. Wells Fargo entered into written agreements with Abdala Saieh, as Settlor of the trust and as a bank customer. These agreements specified the duties of care that Wells Fargo owed to Abdala Saieh, the trust, Jamce, and the trust beneficiaries. Wells Fargo has the original documents forming these contractual relationships. Some of these documents are not available to the Plaintiffs.

On September 7, 2011, the Stansell parties served a writ of garnishment upon Wells Fargo seeking assets belonging to Jamce. Without notifying any of the trust beneficiaries, Wells Fargo asserted on October 11, 2011, in an unsworn statement, that it held in its possession funds that were "in its general ledger account (together with accrued interest) as part of a blocked transaction involving JAMCE Investments Ltd." in the amount of $836,167.75. Wells Fargo failed to inform the garnishment court that any assets that may have once have belonged to Jamce were held by an independent subsidiary of Wells Fargo (such that the garnishment writ was invalid) or that the assets were not within the jurisdiction of the court and either remained in the Cayman Islands or otherwise were outside the State of Florida (such that there was no jurisdiction for the garnishment writ).

Wells Fargo did not reveal—and has still not revealed—whether the assets were located within the State of Florida, and thus concealed from the beneficiaries and the garnishment court whether the funds were outside the jurisdiction of that court. Despite Jamce's dissolution, abandonment, or nonexistence, Wells Fargo failed to reveal to the garnishment court that the assets were or could be the property of the trust beneficiaries and not the property of Jamce. Based on

5

statements by Wells Fargo, the garnishment court found that only the trust itself could appear in that proceeding to assert any interest in the assets and that the beneficiaries had no standing.

Wells Fargo deliberately failed to notify Plaintiffs that their private confidential banking information had been provided to another party and that they had become involved in ex parte litigation. Wells Fargo's failure to defend against the writ of garnishment, to notify the Plaintiffs of the garnishment and execution writ or of the discovery provided by Wells Fargo, or to scrutinize the writ and demands to ensure they were properly construed and executed, directed to the proper entity, and reached assets over which the court had jurisdiction, seriously harmed the Plaintiffs.

By declining to notify the Plaintiffs about or defend the Plaintiffs against the writ and discovery demands, even after requests made by counsel for one of the beneficiaries, Wells Fargo prevented the Plaintiffs from timely retaining counsel or otherwise defending against the enforcement proceedings and from obtaining standing to litigate their individual interests. Upon belatedly obtaining counsel, Plaintiffs incurred additional fees and costs due to the procedural impediments resulting from the neglect and other wrongful actions of Wells Fargo. Timely notification of the writ of garnishment or demand for and provision of confidential account information would have enabled the Plaintiffs (as third-parties, not defendants, to the Stansell action) to successfully defend against the enforcement proceedings and to timely and successfully appeal any adverse decision.

## COUNT I - BREACH OF FIDUCIARY DUTY

Wells Fargo argues that the investment discretion granted to it under the trust deed necessarily permitted it to waste the assets of the trust in a negligent or wilful manner, and that the investment discretion carried over to ever other action taken by Wells Fargo. But

6

such claims, that directly contradict the allegations of the complaint and rest on a strained interpretation that makes no sense and has no precedent, must await further proceedings in this case. A complaint may not be so dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Pataula Elec. Membership Corp. v. Whitworth*, 951 F.2d 1238, 1240 (11th Cir.1992). To the extent Wells Fargo claims a trust relationship where the trustee could act directly contrary to the interests of the settlor and the beneficiary cannot be sustained at the motion to dismiss stage of the case.

Neither Florida nor Cayman Island law support Wells Fargo's actions and it disregard of its trust responsibilities and its duties of honesty to the post-judgment court, to the account holders, and to trust beneficiaries. Wells Fargo's theory is once the trustee has the money the investment advisor can treat it as its own and waste it without restriction; but granting investment and litigation defense discretion does not eliminate implied duty of good faith and reasonableness and still requires the trustee to act as a trustee and not an adversary. See, e.g., *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1315 (11th Cir. 1999) ("Under Florida law, the implied covenant of good faith and fair dealing is a part of every contract.") (emphasis added) (*citing County of Brevard v. Miorelli Eng'g, Inc*., 703 So.2d 1049, 1050 (Fla. 1997)); *Sepe v. City of Safety Harbor*, 761 So. 2d 1182, 1183-84 & n.2 (Fla. 2d DCA 2000) (contractual provision that municipality has "sole discretion" not to pursue a certain action—a provision far broader than that invoked by Defendant Ocean Bank here—does not refute implied covenant of good faith with respect to that term of the agreement; "Numerous cases arising in many varied contexts apply the implied duty of good faith and fair dealing to an obligation that is exercised with sole discretion.").

Wells Fargo relies on the false premise that OFAC made them move the money to the United States, but that is not true. mtd 2, 14. First, the regulation referred to applied only to a "U.S. financial institution, *currently holding property*," not to a U.S. financial institution acting as a financial advisor as was the U.S. bank's role in the case of the trust at issue. *See* 31 C.F.R. § 536.203. More importantly, these assets were held in a brokerage account and the liquidation of that account was not necessary except to distribute assets to the beneficiaries. *See Stansell v. Juvenal Palmera, et al.*, M.D. Fla. Case No. 8:09-CV-02308, Dckt. Ent. 739 (explaining that as to Brunello trust, managed by Bank of America, the assets were not liquid and were subject to market variations as of April 29, 2013, *after* the turnover judgment relevant to the present case). Wells Fargo's post hoc interpretation of the regulation as a requirement to liquidate foreign assets and open accounts inside the United States has no precedent and misinterprets OFAC requirements.

The timing of Wells Fargo's breach of fiduciary duty in moving funds to the United States and opening accounts to hold them, thus precluding Claimants from obtaining Jamce assets when OFAC lifted the blocking order in January 2012, is also in question. The record does not support Wells Fargo's implicit assertion that such transfer occurred before the OFAC blocking order was lifted.

Wells Fargo also argues that its wrongdoing was not the proximate cause of the injury. But that argument ignores that but for Wells Fargo's wrongful actions, the loss of the funds would not have occurred because the funds would not have been (or Wells Fargo could not have claimed) that the assets were within the jurisdiction of the garnishment court. Thus, it does not matter whether Wells Fargo foresaw that its wrongful conduct would cause harm, only that it did engage in that wrongful conduct in complete disregard of trust beneficiaries' interests.

Wells Fargo argues that it tried to defend against the garnishment by asserting the need for an evidentiary hearing. But by falsely giving the impression, in its garnishment writ answer, that Jamce corporation still existed and still owned the funds, Wells Fargo extinguished plaintiffs' standing to contest the garnishment by way of an evidentiary hearing. That is precisely what the Stansell decision holds as to the standing of the beneficiaries, i.e., that the district court was entitled to rely on Wells Fargo's claim that the money at issue belonged to Jamce, when in fact Wells Fargo knew that was untrue, in that Jamce had not existed for at least four years when Wells Fargo made that misrepresentation. Wells Fargo was the proximate ***wrongful*** cause of loss.

Wells Fargo claims the Plaintiffs themselves appeared in the *Stansell* action and had an opportunity to contest the turnover order, as well as to appeal the adverse judgment to the Eleventh Circuit. But Wells Fargo again ignores that the Plaintiffs were deemed to have no standing to participate, because Wells Fargo had falsely represented that only the corporation Jamce (which actually no longer existed) owned the funds. Plaintiffs had no standing and they lacked the facts necessary to assert standing because Wells Fargo gave out false information, and never gave the garnishment district court the exhibit they attached to their motion to dismiss, so that the district court could know that the money actually belonged to the beneficiaries and not the company. Ignoring the standing problem, Wells Fargo cites arguments made by other individual parties who were personally listed by OFAC, not the innocent Plaintiff beneficiaries such as the Sutherlins, U.S. citizens whose rights were extinguished by Wells Fargo's negligence and dereliction. The standing bar was the only relevant holding as to these Plaintiffs.

Wells Fargo's claim of collateral estoppel is thus mistaken for several reasons. *See Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1077 (11th Cir. 2013) (citing Florida law holding that

9

where the "final judgment in the first suit addressed only" a limited set of claims unrelated to breach of contract, "it had no res judicata effect on the breach of contract claim").

Wells Fargo's breach of fiduciary duty to distribute does not mean writing every beneficiary a check; it means putting the money in accounts for each beneficiary. At that point, had they done so, the money could have been released in January 2012 when all semblance of an OFAC blocking order disappeared. *See Stansell* appellate decision (ordering the return of nearly $2 million to the Brunello trust which continued to be represented and defended by Bank of America). Wells Fargo cannot ignore the lesson of the Brunello Trust non-abandonment of fiduciary responsibilities that protected its beneficiaries. Recognizing dissolution of the trust did not require liquidation of stock assets or creation of a new bank account in a former entity's name. Wells Fargo's illegality was in creating a false account in the name of a company that they knew had already dissolved

The Florida Supreme Court has recognized "a bank's duty of confidentiality concerning a depositor's account" stemming from the "general rule of confidentiality," and has found a correlative duty to disclose material facts not otherwise available to its customer. *Barnett Bank of West Florida v. Hooper*, 498 So. 2d 923, 925 (Fla. 1986) ("[W]e find that where a bank becomes involved in a transaction with a customer with whom it has established a relationship of trust and confidence, and it is a transaction from which the bank is likely to benefit at the customer's expense, the bank may be found to have assumed a duty to disclose facts material to the transaction, peculiarly within its knowledge, and not otherwise available to the customer.").

## COUNT II - BREACH OF THIRD-PARTY BENEFICIARY CONTRACT

Wells Fargo's breach of contract was primarily its failure to act as a trustee, blurring its roles, not telling beneficiaries anything. The failure to act as a trustee with fiduciary responsibilities is the

principal contractual provision that Wells Fargo has breached. Wells Fargo argues that party's "contractual obligation is discharged when the party's performance of the contract is prevented by governmental order." *Leon Cty. v. Gluesenkamp*, 873 So. 2d 460, 463 (Fla. DCA 2004). But no governmental order required Wells Fargo to falsely maintain the premise that Jamce still existed when they opened an account in its name, moving internationally funds belonging to the plaintiffs in order to do so.

Breach of contract: actions for breach of contract may be maintained for breach of a promise made in a trust agreement. *Harnish v. Carbonell*, 328 So. 2d 489, 489 (Fla. Dist. Ct. App. 1976); *see also Anderson v. Rouse*, 147 So. 847, 848 (Fla. 1933) (holding that the trustee is "liable in a suit at law for damages occasioned by a violation of a trust agreement" and that the right "to maintain an action at law against the trustee for such breach of contract is elementary") (citing *Taylor v. Mayo*, 110 U. S. 330 (*). In fact, the case cited by Wells Fargo, *Sanders v. Citizens Nat. Bank of Leesburg*, 585 So. 2d 1064, 1065 (Fla. 5th DCA 1991), deals only with the bar to the settlor's bringing a contract action and discusses exceptions where contract principles still apply, noting the "third party beneficiary context" as a potential basis for an action.

Also, the complaint alleges additional contract documents. Numerous Florida courts have held that where a complaint alleges that the defendant was a party to the contract and that the plaintiff does not possess a copy of the contract, dismissal is inappropriate under Rule 1.130. *See, e.g., Legare v. Music & Worth Constr., Inc.,* 486 So. 2d 1359, 1363 n.5 (Fla. 1st DCA 1986)*; Parkway General v. Allstate Ins., Inc.*, 393 So.2d 1171, 1172 (Fla. 3d DCA1981); *Amiker v. Mid-Century Insurance Co.*, 398 So. 2d 974 (Fla. 1st DCA 1981); *Sachse v. Tampa Music Co.*, 262 So.2d

17 (Fla. 2d DCA 1972). Under these circumstances, the pleader should be given an opportunity to establish the contract's existence through discovery. *Amiker*, 398 So. 2d at 975. Dismissal on the breach of contract claims on this record would be wholly inappropriate.

## COUNT III - BREACH OF DUTY TO NOTIFY

Wells Fargo asserts that there is no duty to notify and to indemnify in this context but fails to cite any authority for such a cramped view of trustee responsibilities. Wells Fargo should have alerted Plaintiffs to their actions with Plaintiffs' money. The United States Supreme Court and numerous other courts have recognized that garnishees bear a duty to notify their creditors of garnishment proceedings brought against assets held by the garnishee. *See, e.g., Harris v. Balk*, 198 U.S. 215, 227-28 (1905); *Pennoyer v. Neff*, 95 U.S. 714, 24 (1878); *Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 269* (2d Cir. 2002) (*overruled on other grounds as recognized by numerous decisions*); *Polar Shipping, Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 641 (9th Cir. 1982). For example, the *Harris* Court held,

> [I]t is recognized as the duty of the garnishee to give notice to his own creditor, if he would protect himself, so that the creditor may have the opportunity to defend himself against the claim of the person suing out the attachment.

*Harris*, 198 U.S. at 227

## COUNT IV - BREACH OF DUTY TO DEFEND OR INDEMNIFY

Wells Fargo chose to participate in the legal proceedings and thus could not simply abandon Plaintiffs; Wells Fargo was a party; the demand was made on Wells Fargo, not on the Plaintiffs; no demand or claim has ever been made on the Plaintiffs in relation to this case; Wells Fargo received

a demand that implicated Plaintiffs' funds, but in that conflicted role, violated their fiduciary duty.

## COUNT V - NEGLIGENCE

Wells Fargo appears to claim that the trust agreement required it to pretend that Jamce still existed and to move the funds to the United States, but nothing of the sort is true. Wells Fargo owed a duty to Plaintiffs to exercise reasonable care in the management of the Trust, Jamce, and any accounts or other assets belonging [to] either the Trust or Jamce, and in responding to service of court papers relating to the accounts or assets. Wells Fargo breached its duty by failing to properly respond to the writ of garnishment, failing to notify the Plaintiffs of the service of the writ, failing to notify the Plaintiffs that it was holding assets to which the Plaintiffs had a rightful claim since the time of Abdala Saieh's death, and failing to notify the Plaintiffs of litigation discovery demands and Wells Fargo's responses.

By negligently misstating the jurisdictional and locational status of the Trust assets, or by moving said assets within the jurisdiction of the Stansell court without notice or authority, or by failing to advise the court or the Plaintiffs of the true location of the assets beyond the jurisdiction of the court, Wells Fargo caused the loss to Plaintiffs of more than $836,167.75 that was held by the Defendants and deprived the Plaintiffs of any reasonable opportunity to defend the enforcement action and caused additional costs and attorney's fees to be expended by the Plaintiffs.

## COUNT VI - UNAUTHORIZED CREATION OF ACCOUNT WITHOUT NOTICE AND BY INTENTIONAL OR NEGLIGENT MISREPRESENTATION

The misrepresentation in the unauthorized creation of an account that exposed Plaintiffs' funds to garnishment was actionable. Wells Fargo claims that there is no action under Florida law

for intentional misrepresentation and that therefore Wells Fargo cannot be liable for the creation of accounts in the name of a company that had no right to the funds because it no longer existed, rather than in the name of the actual owners, the Plaintiffs. Wells Fargo cites no precedent for its claim and, in fact, Florida law recognizes actions for intentional or negligent misrepresentation. *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334 (Fla. 1997) (holding that one who negligently supplies false information for guidance of others in transaction in which he has pecuniary interest is subject to liability under theory of negligent misrepresentation for pecuniary loss caused to others by their justifiable reliance on information).

## COUNT VII - CONVERSION

Wells Fargo asserts that because the plaintiffs were blocked from withdrawing funds held by Wells Fargo, Wells Fargo fargo could use the funds for the own purposes or dispose of them and no action for conversion would lie. But the case Wells Fargo cites undermines the interpretation Wells Fargo advances. In *Berlinger v. Wells Fargo*, N.A., 2014 WL 4446268, at *2 (M.D. Fla. Sept. 9, 2014), the court explained that the key to the beneficiaries' right to bring an action for conversion or civil theft was whether, at the time of the improper keeping or transfer of the funds by Wells Fargo, the trust provided for distribution of the assets to the beneficiaries. *Id*. ("[T]here is no allegation that a distribution had been authorized during the time of the delayed transfer of accounts to SunTrust Bank."). In contrast, Plaintiffs have alleged—and the exhibit Wells Fargo filed with its motion show its concession—that at the time that Wells Fargo chose to imperil the funds, the Plaintiffs *right* of distribution had already come into effect. That OFAC imposed an obstacle to the distribution does not mean that conversion of the funds Wells Fargo held for the

14

Plaintiffs did not occur.

Wells Fargo ignores that a third party restraint of the *transfer* of the funds belonging to the Plaintiffs did not extinguish the general possessory rights the Plaintiffs possessed, but merely limited their ability to transfer the funds. Their ownership of the funds was not restricted. The cases cited by Wells Fargo deal with situations in which the legal right to claim the property interest is inchoate or unresolved, not to money in the bank belonging to an accountholder that is subject to a transfer restraint. No other person owned or could dispose of the funds. Wells Fargo's theory that the funds were fair game because of the OFAC listing is implicitly rejected by the *Stansell* decision itself which recognized that the property owners retain their rights despite an OFAC listing. Ordinary English language usage further shows that if someone has $100 in the bank in her own name, it is commonly understood that she possesses $100 and if the bank takes it, there has been a conversion.

### B. Response to Motion to Transfer

### Introduction

The motion for transfer is not well founded. Notably, in a related action, the district court that handled the garnishment proceeding determined that there was no special need for that court's intervention. *See* attached decision in *Stansell v. FARC*, M.D. Fla. No. 8:09-cv-2308 (Feb. 8, 2015) (Dckt. Ent. 1102) (Appendix A, attached hereto), denying the motion of another bank for an injunction to bar proceedings concerning the *Stansell* garnishment; finding no basis for intervention by the original trial judge).

### CONCLUSION

Accordingly, the Court should deny the motions to dismiss and to transfer, and alternatively should grant the Plaintiffs leave to amend in order to cure any defect in the complaint.

Respectfully submitted,

s/ Richard C. Klugh
Richard C. Klugh, Esq.
Fla. Bar No. 305294
40 N.W. 3rd Street, PH 1
Miami, FL 33128
Tel: (305) 536-1191
Fax: (305) 536-2170
Email klughlaw@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY certify that on   June 16, 2017  , I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

s/ Richard C. Klugh
Richard C. Klugh, Esq.
