IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 17-cv-20157-KMM

LUIS SUTHERLIN, MIRIAM SUTHERLIN, JAIME SAIEH, and MOISES SAIEH, individually and as the beneficiaries of the dissolved trust, JAMCE TRUST, and the dissolved trust company, JAMCE INVESTMENTS LTD.,

        Plaintiffs,

v.

WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., FIRST UNION BROKERAGE SERVICE, INC., and FIRST UNION BANK & TRUST COMPANY (CAYMAN) LTD.,

        Defendants.

**WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF
MOTION TO DISMISS [D.E. 19]**

    Defendant Wells Fargo Bank, N.A. ("Wells Fargo") respectfully submits this Reply in support of its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [D.E. 19] ("Motion"), stating:

**INTRODUCTION**

    In its Motion, Wells Fargo challenged Plaintiffs to identify a single allegation supporting their assertion that Wells Fargo is the proximate cause of their injuries. Mot. at 1-3. Rather than meeting this challenge, Plaintiffs shrink from it. Their only response concerning proximate cause is a three-paragraph screed that does not cite their complaint or any authority whatsoever. The reason for this remarkable retreat from case law and the pleadings is clear—the government (OFAC) prohibited Wells Fargo from distributing the assets and the government (the United States District Court for the Middle District of Florida) directed Wells Fargo to pay the assets to a third party. If Plaintiffs have a quarrel with anyone, it is with the U.S. government, not Wells

Fargo. Indeed, Plaintiffs' Opposition [D.E. 21] does not even attempt to explain why Wells Fargo should be held liable for complying with valid orders from OFAC and Federal Judge Lazzara. Because the U.S. government, and not Wells Fargo, is the proximate cause of Plaintiffs' alleged losses, Plaintiffs' complaint should be dismissed with prejudice.

Plaintiffs' failure to meet Wells Fargo's arguments regarding proximate causation with citations to pleadings and authority is symptomatic of their entire Opposition brief. Plaintiffs beat a hasty, and remarkable, retreat from the facts and the law. For example, Plaintiffs' Opposition never once cites the complaint, the trust agreement, the exhibits to the trust agreement, or any of the filings and decisions in *Stansell v. FARC*. They likewise cite no precedent—because there is no such precedent—as support for the majority of their propositions, or even for several of the alleged causes of action that they urge this court to embrace.

Instead, Plaintiffs present a series of slapdash straw-man arguments. For example, they claim that Wells Fargo cannot willfully waste trust assets (Wells Fargo never said otherwise) and that OFAC never forced Wells Fargo to transfer assets to the United States (Wells Fargo never claimed that OFAC did so). Similarly, Plaintiffs argue that they can sue for purported intentional and negligent misrepresentation based on statements that they never accepted as true; that they can sue for breach of contract without identifying any specific contract provisions that were allegedly breached; and, that they can sue for the alleged conversion of assets that Plaintiffs' had no right to obtain. The very nature of Plaintiffs' zero calorie opposition brief demonstrates that their allegations fall woefully short of the plausibility bar. Plaintiffs' complaint should be dismissed with prejudice.

## ARGUMENT

I. **Plaintiffs Fail to Rebut Wells Fargo's Arguments**
   a. **Alleged Transfer of JAMCE Assets to the United States**
      i. **Plaintiffs' Argument—That They Can State a Breach of Fiduciary Duty Claim Based on Conduct that the Deed of Trust Expressly Allows—Is Wrong.**

Plaintiffs concede, as they must, that the agreements between Mr. Saieh and Wells Fargo "specified the duties of care that Wells Fargo owed to Abdala Saieh, the Trust, JAMCE, and the Trust beneficiaries." Compl. ¶ 49; Opp. at 5 (same). Moreover, with regard to those agreements,

Plaintiffs do not, and cannot, dispute that "the Trust Deed confers upon the Trustee and Investment Advisor absolute investment discretion, including . . . where to maintain accounts holding [the trust] assets." Mot. at 5; *id.* at 13 (same). Nor do Plaintiffs dispute that Mr. Saeih chose a U.S. investment advisor to manage the Trust Assets. Mot. at 5; *id.* at 13. Mr. Saieh also agreed to use a U.S. broker for "custody of assets" and "all orders for the execution of all securities for the trust." Compl. Ex. A, ¶ 2.4; *see also* Wells Fargo Opp. to Plaintiffs' Mot. for Remand at 4 (Mar. 1, 2017), DE 13. Plaintiffs even acknowledge that the "[trust] assets were held in a brokerage account," Opp. at 8, *i.e.*, the U.S. brokerage account selected in the Trust Deed. Faced with clear provisions allowing, contemplating, and arguably ***requiring*** Wells Fargo to transfer trust assets to the United States, Plaintiffs attack a straw man.

Plaintiffs argue that "the trust deed . . . [never] permitted [Wells Fargo] to waste the assets of the trust in a negligent or willful manner" or to act "directly contrary to the interests of the settlor or the beneficiary." Opp. at 6, 7. But Wells Fargo has never argued that it was permitted to waste trust assets or act contrary to the interests of the settlor or beneficiaries; Wells Fargo argued that it was permitted to invest through U.S. accounts. Mot. at 13.

Plaintiffs do not explain how transferring trust funds to the United States (Compl. ¶¶ 16, 100)—a jurisdiction with an excellent reputation for stability, integrity of financial markets and institutions, and breadth of investment offerings—was a "waste" of trust funds or was contrary to the interests of the settlor or beneficiaries. Nor do Plaintiffs offer any explanation as to why Mr. Saieh, if he wanted the Trust Assets fenced off from U.S. jurisdiction, chose a U.S. investment advisor to manage the assets and a U.S. broker to take custody of them when he settled the trust in 1999. Compl. Ex. A, ¶¶ 2.3, 2.4; *id.* Schedule B. The fact that the U.S. government ***subsequently*** (and according to Plaintiffs, mistakenly (Compl. ¶¶ 21-27)) blocked the assets seven years later, in 2006, does not mean that the alleged transfer was wasteful, contrary to the settlor's or beneficiaries' interests, or otherwise improper.

> ii. **Plaintiffs Attempt to Cure the Lack of Proximate Causation by Arguing "But For" Causation is Unavailing.**

Plaintiffs do not dispute that the Florida courts, including the Florida Supreme Court, have established unequivocally that proximate causation is an essential element of a claim for breach of fiduciary duty. *See Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002) (reciting

3

elements); *Patel v. Catamaran Health Sols., LLC*, No. 15-CV-61891, 2016 WL 5942475, at *9 (S.D. Fla. Jan. 14, 2016) (same, granting motion to dismiss breach of fiduciary duty claim).

Plaintiffs misconstrue black-letter law when they argue that they satisfy the proximate causation element of breach of fiduciary duty because "***but for*** Wells Fargo's wrongful actions, the loss of the funds would not have occurred because the funds would not have been . . . within the jurisdiction of the garnishment court." Opp. at 8 (emphasis added). "[A]s all first-year law students and Claimants' attorneys are aware—there exists an important difference between 'but for' and proximate causation." *Matter of Sea Star Line, LLC*, No. 3:15-CV-1297-HES-MCR, 2016 WL 8861620, at *2 (M.D. Fla. Oct. 14, 2016). "[P]roximate cause asks 'whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." *Chirillo v. Granicz*, 199 So. 3d 246, 249 (Fla. 2016).[1] The word "[s]ubstantial," in turn, "means more than 'but for' the [tort], the harm would not have resulted . . ." *Chavez v. Noble Drilling Corp.*, 567 F.2d 287, 289 (5th Cir. 1978).[2] Plaintiffs' argument that but-for causation satisfies the proximate causation contradicts Florida law.

Nor can there be any dispute that Plaintiffs have failed to allege proximate causation. To begin, Plaintiffs have no response to the fact that their own allegations—i.e., that OFAC designated JAMCE by *mistake,* Compl. ¶¶ 21-27—conclusively establish that OFAC's freezing the JAMCE Assets, and the turnover order that rests on the same OFAC determination (Order [granting writ of garnishment], *Stansell* (Sept. 6, 2011), DE 326), were unforeseeable. Instead, Plaintiffs blithely assert that foreseeability is irrelevant ("it does not matter whether Wells Fargo foresaw that its wrongful conduct would cause harm," Opp. at 8). This argument, however, is contrary to Florida law. *Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1320 (S.D. Fla. 2009) ("[p]roximate cause is defined in terms of foreseeability"), *aff'd*, 395 F. App'x 583 (11th Cir.

---

[1] This case was decided in the professional negligence context. "Although breach of fiduciary duty and professional negligence are separate causes of action under Florida law, courts analyze the elements of neglect of duty and proximate cause in the same way under both theories." *Fed. Deposit Ins. Corp. for Orion Bank of Naples, Florida v. Nason Yeager Gerson White & Lioce, P.A.*, No. 2:13-cv-208, 2013 WL 12200968, at *8 (M.D. Fla. July 22, 2013).

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

2010).  And moreover, such skeletal arguments, devoid of citation, waive Plaintiffs' position. *Donahay v. Palm Beach Tours & Transp.,* No. 06-61279, 2007 WL 1119206, at *2 (S.D. Fla. April 16, 2007) ("a litigant who fails to press a point by supporting it with pertinent authority forfeits the point") (collecting cases).  Similarly, Plaintiffs do not even attempt to address whether the alleged transfer of assets to the United States was a substantial cause of their alleged injury.

Rather than contend with proximate causation, Plaintiffs attack a straw man, arguing that Wells Fargo's position rises or falls on whether "OFAC made [Wells Fargo] move the money to the United States."  Opp. at 8.  But Wells Fargo does not argue that OFAC required it to move assets to the United States; nor is that relevant.  Rather, Wells Fargo accepts as true Plaintiffs' allegations that Wells Fargo transferred the JAMCE Assets to the United States (which the Trust Deed expressly authorized) absent any government compulsion (Compl. ¶¶ 16, 100, Ex. A ¶¶ 2.3, 2.4), but explains that following the transfer, OFAC's actions were an unforeseen, intervening third-party action that led to Plaintiffs' losses and broke the causal chain. *Jaffe*, 667 F. Supp. 2d at 1320 (holding that proximate cause is not established "[w]here the injury is caused by the intervention of an independent efficient cause to which the defendant did not contribute").

### iii. Unauthorized Creation of an Account

Plaintiffs do not dispute Wells Fargo's point that there is no tort for "unauthorized creation of an account."  Instead, they recast their claim as a different tort: "negligent or intentional misrepresentation."  *See* Opp. 13-14. But "a complaint may not be amended by briefs in opposition to a motion to dismiss."  *McKally v. Perez*, 87 F. Supp. 3d 1310, 1317 (S.D. Fla. 2015) (citing *Huls v. Llabona,* 437 Fed. Appx. 830, 832 n.5 (11th Cir. 2011)).

In any event, negligent and intentional misrepresentation both require that Plaintiffs allege (1) a false statement and (2) their own "justifiable reliance" on that statement.  *See Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334, 337, 339 (Fla. 1997); *In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 371 (S.D. Fla. 1991).  Here, Plaintiffs allege that "Wells Fargo made an express or implied misrepresentation as to the status of the account" to the Middle District of Florida (in answering the Writ of Garnishment), thereby "wrongly making the account appear [to the court] to be subject to garnishment."  First, as we discuss below (*infra*, 8),

Wells Fargo's Answer to the Writ of Garnishment, in which Wells Fargo described the "status of the account" (*i.e.*, blocked pursuant to OFAC regulations) was not only true, but required by applicable law. Second, Plaintiffs do not—and cannot—allege that they "reasonably relied" on Wells Fargo's statements because they affirmatively argued to the Middle District that Wells Fargo was wrong, and that Plaintiffs were the rightful owners of the trust funds. Mot. at 9-10 (citing Plaintiffs' *Stansell* filings).

### iv. Breach of Contract

Plaintiffs offer no response to Wells Fargo's argument that they "fail to allege any contractual provision that Wells Fargo has breached, and indeed, [that] there is no such provision." Mot. at 15. That is fatal to their claim that Wells Fargo breached a contract by transferring assets to the United States. *Donahay*, 2007 WL 1119206, at *2.

Nor do Plaintiffs' cases support their view that claims arising under a trust agreement may be pleaded as breaches of contract: *Harnish v. Carbonell*, 328 So. 2d 489, 489 (Fla. Dist. Ct. App. 1976), was an action for payment of rent "in accordance with the terms of a lease," not for breach of a trust agreement, and *Anderson v. Rouse*, 147 So. 847, 848 (Fla. 1933) is inapposite because it addressed only whether a plaintiff could maintain an action for breach of a trust agreement "at law," given the then-applicable division of law versus equity. Florida precedent, *Sanders v. Citizens Nat. Bank of Leesburg*, 585 So. 2d 1064, 1065 (Fla. 5th DCA 1991), however, makes clear that Plaintiffs' claims must rise and fall on trust principles. Contrary to what Plaintiffs argue, *Sanders* raises the "third party beneficiary context" to reject it, not to preserve it as an "exception." *Id.*

Finally, the allegation that there are "additional contract documents" (Opp. 11) does not change the conclusion that the contract claims must be dismissed. The complaint's allegations of such additional contracts are utterly conclusory; nowhere do Plaintiffs allege anything substantive about what contracts if any—other than the Trust Deed and accompanying exhibits already attached to the Complaint—might exist and be relevant to the claims here. Because such conclusory allegations "do[] not unlock the doors of discovery" (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), the contract claim should be dismissed. Plaintiffs' citation to Fla. R. Civ. P. 1.130 and state-law cases (*see* Opp. 11-12) are irrelevant to this principle of federal civil procedure.

### v. Conversion

Plaintiffs concede, as they must, that Wells Fargo was subject to "a third party [i.e., OFAC] restraint of the *transfer* of the funds belonging to the Plaintiffs." Opp. at 15. This restraint had the force of law. 31 C.F.R. § 536.201(a). Plaintiffs stand that law on its head when they argue that their own interests (*i.e.*, their interest in obtaining a distribution pursuant to the Trust Deed) override U.S. law. Opp. at 14. Rather, to the extent that the Trust Deed called for Plaintiffs to receive a distribution of the Trust Assets, the Trust Deed was in direct contravention of U.S. law, and hence void. *Harris v. Gonzalez,* 789 So.2d 405, 409 (Fla. 4th DCA 2001) ("[a] contract which violates a provision of the constitution or a statute is void and illegal and, will not be enforced in our courts."). In *Berlinger v. Wells Fargo, N.A.*, No. 2:11-cv-459-FtM-29CM, 2014 WL 4446268, at *2 (M.D. Fla. Sept. 9, 2014), the court held that Plaintiffs failed to state a claim for conversion because they lacked "an immediate right to possess any trust assets." Here, the same as true, as U.S. regulations override the Trust Deed (and not *vice versa*), depriving Plaintiffs of any "immediate right" to the trust assets.

### b. Alleged Failure to Give Notice of, Defend, and Indemnify the Turnover Action

### i. Breach of Fiduciary Duty

First, Plaintiffs do not respond to Wells Fargo's argument that under the Trust Deed, Wells Fargo had no duty to defend or indemnify them. Plaintiffs point to no Florida law that imposes such a duty in any circumstance, let alone where the Trust Deed affords the Trustee sole and absolute discretion to resolve third-party claims against the trust. Compl. Ex. A, ¶ 2.3.6.

Second, Plaintiffs fail to establish that Wells Fargo was the proximate cause of the turnover order issued by the Middle District of Florida. With regard to Plaintiff JAMCE, (1) the trial court held that JAMCE's claim to the Trust Assets was inferior to Mr. Stansell's because JAMCE was a foreign company, (*see* Turnover Judgment on Answer to Writ of Garnishment in a Civil Case ¶ 9, *Stansell* (Apr. 23, 2011), DE 725), and (2) the Eleventh Circuit affirmed because Plaintiffs' counsel negligently waived the argument that JAMCE was entitled to the Trust Assets, *Stansell v. Revolutionary Armed Forces of Colombia, (FARC)*, 771 F.3d 713, 744 (11th Cir. 2014). Plaintiffs do not attempt to fault Wells Fargo for either decision—nor could they—as they concede JAMCE was a foreign company (Compl. ¶ 3), and Plaintiffs' counsel was their

own agent.  *See Benedict Pineapple Co. v. Atl. Coast Line R.R.,* 46 So. 732, 737 (Fla. 1908) ("[w]here the injury is caused by . . . the act or omission of the plaintiff, the negligence of the defendant is not the proximate cause of the injury").

With regard to the individual Plaintiffs, they argue that Wells Fargo "misrepresent[ed]" to the Middle District of Florida that JAMCE "still owned the funds." Opp. at 9. Actually, what Wells Fargo told the Middle District was that "WELLS FARGO is holding $836,167.75 in its general ledger account (together with accrued interest) as part of a blocked transaction involving JAMCE Investments Ltd." Answer to Writ of Garnishment, *Stansell* (Oct. 11, 2011), DE 435. Plaintiffs argue that Wells Fargo nevertheless should have said that the trust beneficiaries owned the Trust Assets. Opp. 9. Had Wells Fargo done so, it would have violated U.S. law.

As Plaintiffs allege, the JAMCE Assets were blocked from 2006 through 2012. Compl. ¶¶ 21, 26; *see also* Motion, Ex. 1 (Declaration of Alex C. Lakatos [D.E. 19-1]). Thus, in 2011, when Wells Fargo filed its Answer concerning the JAMCE blocked property, Wells Fargo was prohibited from transferring or otherwise dealing in the blocked funds. 31 C.F.R. §536.201(a). Had Wells Fargo informed the Middle District that the blocked assets belonged to the individual Plaintiffs, then Wells Fargo would have violated that prohibition (by unlawfully recognizing a transfer in the blocked property). Moreover, Plaintiffs specifically argued to the Middle District that they were the rightful heirs of the blocked assets due to the death of the settlor and that they owned the assets by operation of Trust Deed. Mot. at 9-10. The Court rejected that argument. *Id*. at 10. Had Wells Fargo made the same point, it would not have changed the outcome.

Finally, Plaintiffs argue that Wells Fargo's failure to notify them of the *Stansell* action prejudiced their defense. Opp. at 6 ("Wells Fargo prevented the Plaintiffs from timely retaining counsel or otherwise defending against the enforcement proceedings"). But Plaintiffs' counsel first appeared in the *Stansell* action over 17 months before the court entered the turnover order for the JAMCE action, and the Court never held that Plaintiffs' counsel was precluded from opposing the turnover judgment because his appearance in the matter was tardy. Mot. at 9.

    ii.    **Breach of Duty to Notify and to Indemnify**

Plaintiffs' Opposition papers fail to state any authority for a stand-alone tort for breach of duty to notify. The cases Plaintiffs cite are not from Florida, and are inapposite. *Harris v. Balk*,

198 U.S. 215, 227-28 (1905) sounds in negligence. *Winter Storm Shipping, Ltd. v.TPI*, 310 F.3d 263, 269 (2d Cir. 2002) and *Polar Shipping, Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 641 (9th Cir. 1982) discuss the constitutionality of admiralty rules, not tort duties. In any event, as discussed above, Plaintiffs had ample notice of the Florida proceedings.

Plaintiffs' sole (and we respectfully submit, incoherent) sentence devoted to the alleged duty to defend or indemnify (Opp. 12-13) provides no support for the complaint's conclusory allegation that such a duty exists, or that Plaintiffs can recover for it. This claim must therefore be dismissed. *See Iqbal*, 556 U.S. at 678.

### iii. Negligence

Plaintiffs' negligence argument cites to no authority; in fact, all but one of the sentences are cut-and-pasted—verbatim—from the complaint. *Compare* Opp. 13 *with* Compl. ¶¶ 90-91, 94. As such, Plaintiffs do nothing to alter the conclusion that their negligence claim fails (a) for want of proximate cause, and (b) because the acts complained of did not breach any duty of care. *See* Mot. 18, 20. This claim, too, must be dismissed.

### iv. Breach of Contract

Plaintiffs' opposition, like their Complaint, fails to identify any contractual provisions requiring that Wells Fargo defend, indemnify, or notify them with respect to the Florida proceedings. Opp. at 10-12. Absent such provisions, there can be no breach.

### c. Alleged Failure to Distribute the JAMCE Assets After the Death of Mr. Saieh

### i. Breach of Fiduciary Duty

Plaintiffs' suggestion that Wells Fargo should have distributed assets to them in violation of OFAC regulations and in spite of the Middle District's order is as unpersuasive as it is misplaced. First, Plaintiffs misunderstand OFAC regulations. Plaintiffs argue that 31 C.F.R. § 536.203 ("Holding certain types of blocked property *in interest bearing accounts*") (emphasis added) is inapplicable to Wells Fargo. Plaintiffs thus fail to answer Wells Fargo's argument that under 31 C.F.R. § 536.201 ("Prohibited transactions involving blocked property"), Wells Fargo was prohibited from distributing the Trust Assets.

Similarly, Plaintiffs misunderstand the force of court orders, arguing that the JAMCE "assets were held in a brokerage account and the liquidation of that account was not necessary

9

except to distribute assets to the beneficiaries." But the court's turnover order required exactly that: liquidation of whatever Wells Fargo account held the JAMCE asset, and not for the benefit of the trust beneficiaries. Turnover Judgment ¶¶ 15-19, *Stansell,* DE 725.

### ii. Breach of Contract

Again, Plaintiffs offer no answer to the fact that Wells Fargo was prohibited from distributing the Trust Assets by OFAC regulations and the order of the Middle District of Florida. Opp. at 11. To the contrary, Plaintiffs press only the point that Wells Fargo "opened an account in [JAMCE's] name" and "moved funds internationally to do so." *Id.* As set forth above, these acts were consistent with the Trust Deed. In any event, Florida law is clear that Wells Fargo cannot be sued for breach of contract based on its compliance with the law. *See Leon Cty. v. Gluesenkamp*, 873 So. 2d 460, 463 (Fla. 1st DCA 2004).

### iii. Negligence

Plaintiffs' negligence claim fails for the same reasons set forth above.

## CONCLUSION

Based on the foregoing, and as set forth in the Motion, Wells Fargo respectfully requests that the Court dismiss Plaintiffs' complaint with prejudice, and award Wells Fargo such other and further relief that the Court deems just and proper.

Respectfully Submitted,

By: */s/ Jorge D. Guttman*
   William K. Hill, Esq.
   Florida Bar No. 747180
   whill@gunster.com
   Jorge D. Guttman, Esq.
   Florida Bar No. 015319
   jguttman@gunster.com
   **GUNSTER**
   *Counsel for Defendant,*
   *Wells Fargo Bank, N.A.*
   600 Brickell Avenue Suite 3500
   Miami, Florida 33131
   Tel: (305) 376-6000/Fax: (305) 376-6010

OF COUNSEL
   Alex C. Lakatos, Esq.
   (*Pro Hac Vice Application to be Filed*)
   alakatos@mayerbrown.com
   Andrew A. Lyons-Berg, Esq.
   (*Pro Hac Vice Application to be Filed*)
   alyons-berg@mayerbrown.com
   **MAYER BROWN LLP**
   *Counsel for Defendant*
   *Wells Fargo Bank, N.A.*
   1999 K Street N.W. Suite 842 Washington, DC 20006-1101
   Telephone: (202) 263-3312
   Facsimile: (202) 263-5312

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 23, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that the foregoing document has been served via electronic mail to counsel for Plaintiffs, Richard C. Klugh, Esq., klughlaw@gmail.com, Law Offices of Richard C. Klugh, P.A., 40 N.W. 3rd Street, PH 1, Miami, Florida 33128l.

By: /s/ *Jorge D. Guttman*
Jorge D. Guttman

MIA_ACTIVE 4625311.1