UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MIRIAM SUTHERLIN, *et al.*,

    Plaintiffs,

v.                                                  CASE NO. 8:17-cv-2740-T-26AAS

WELLS FARGO & COMPANY, *et al.*,

    Defendants.
    _____/

# O R D E R

**BEFORE THE COURT** is Defendant's Motion to Dismiss (Dkt. 59) and Plaintiff's Response (Dkt. 61). After careful review of the allegations of the Amended Complaint (Dkt. 58), the arguments of the counsel, and the applicable law, the Court concludes the motion should be granted.

## FACTUAL ALLEGATIONS AND BACKGROUND

Plaintiffs Miriam Sutherlin, Jaime Saieh, and Moises Saieh are the children of Abdala Luis Saieh Jassir (Abdala Saieh). In 1999, Abdala Saieh, as settlor, created the JAMCE Trust in the Cayman Islands. Pursuant to the terms of the trust deed, he selected First Union Bank and Trust Company (Cayman) Ltd. as trustee,[1] First Union National

---

[1] Through a series of mergers and acquisitions in 2001 and 2008, Wells Fargo now owns First Union Bank and Trust Company (Cayman) Ltd. and First Union Brokerage Service, Inc., as subsidiaries. See docket 58, ¶ 17.

Bank as the investment advisor, and First Union Brokerage Service, Inc., as the custodian of the trust assets in an account. The trust deed also provided that a wholly-owned investment company, JAMCE Investment Ltd. (JAMCE), would work with the investment advisor. Wells Fargo is the sole shareholder of JAMCE, a company incorporated in the Cayman Islands. Plaintiffs allege that they are the "beneficial owners" of the JAMCE Trust and JAMCE, as the beneficiaries of the JAMCE Trust upon the settlor's death.

Seven years later on November 28, 2006, the Office of Foreign Assets Control of the United States Treasury Department (OFAC) designated JAMCE and Abdala Saieh as narcotics traffickers.[2] 31 C.F.R. §§ 536.312. This fact was noted in another case before this Court involving both JAMCE and Abdala Saieh in connection with the Revolutionary Armed Forces of Colombia (FARC), which entailed garnishment proceedings to compensate victims of terrorism under the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337 (TRIA).[3] See Stansell v. Revolutionary Armed Forces of Colombia (FARC), No. 8:09-cv-2308-T-26MAP, 2013 WL 12132056, at *1 (M.D. Fla. Apr. 12, 2013) ("One of the individuals designated, Abdala Saieh Jassir, was found to be serving as a front person for [Colombia's North Valle drug cartel leaders]

---

[2] The OFAC maintains online archives of "Changes to List of Specially Designated Nationals and Blocked Persons." The archived pdf form of changes since January 1, 2006, is titled "SDN Changes 2006." JAMCE was added on November 28, 2006.

[3] This provision is codified as a note to 28 U.S.C. § 1610.

since 1988."). Upon OFAC's naming JAMCE as a Specially Designated Narcotics Trafficker (SDNT), Wells Fargo was legally obligated to freeze the assets of the company. 31 C.F.R. §§ 536.312, 594.201, 594.301 ("Specially designated narcotics trafficker," "Prohibited transactions involving blocked property," and "Blocked account; blocked property," respectively). Per the regulations, the account and property of JAMCE became "blocked" and could not be "transferred, paid, exported, withdrawn" or used in other dealings. 31 C.F.R. §§ 536.201(a), 594.201(a), 594.301.

The following year in October 2007, Abdala Saieh died. In 2010, in the <u>Stansell</u> case that was pending before this Court, the plaintiffs obtained a default judgment against FARC for millions of dollars. See <u>Stansell</u>, No. 8:09-cv-2308-T-26MAP, docket 233. The plaintiffs in <u>Stansell</u> then sought to enforce the judgment, and, in the process, sought the turnover of the blocked assets belonging to JAMCE as an agency or instrumentality of the terrorist party, FARC, pursuant to § 201 of TRIA. See <u>Stansell v. FARC</u>, 771 F.3d 713, 723 (11th Cir. 2014) (citing <u>Weininger v. Castro</u>, 462 F.Supp.2d 457, 479 (S.D.N.Y. 2006)). In 2011, after this Court found that JAMCE was an agency or instrumentality "of the FARC because . . . they assisted the financial or money laundering networks and thereby played a significant role in the FARC's cocaine manufacturing and international cocaine trafficking," a writ of garnishment issued to Wells Fargo as garnishee for the blocked JAMCE assets in the amount of $316,023,121.16. See <u>Stansell</u>, 8:09-cv-2308-T-26MAP, docket 326, ¶ 15 (order granting writ), and docket 362 (writ). In its answer,

Wells Fargo stated that it held $836,167.75, plus accrued interest, in its general ledger account as part of a blocked transaction involving JAMCE. See Stansell, 8:09-cv-2308-T-26MAP, docket 435, ¶ 1.

After OFAC was petitioned in 2010 to reconsider the designation of Abdala Saieh and JAMCE as SDNTs, they were removed from the list in January 2012. In February 2012, as third-party claimants in the Stansell case, Jaime Saieh, Moises Saieh, and others[4] through Mr. Klugh filed an emergency motion to set aside writs for the reason that the owners of properties subject to the writs were either never listed on the OFAC list or had been removed January 10, 2012. See Stansell, 8:09-cv-2308-T-26MAP, docket 551. One year later in February 2013, Mr. Klugh filed his notice of appearance for JAMCE, in which he took the position that it was a trust. See Stansell, 8:09-cv-2308-T-26MAP, docket 595. JAMCE, however, is not a trust, but is or was a Cayman Islands company. See Stansell, 8:09-cv-2308-T-26MAP, docket 747, pages 1-2, n.1 (order).

The Stansell plaintiffs moved for entry of a turnover judgment in early April 2013 based on Wells Fargo's answer as garnishee. See Stansell, 8:09-cv-2308-T-26MAP, docket 650 (motion for turnover). The plaintiffs there acknowledged that although JAMCE was later removed from the list, the writ was served in September 2011 before the removal, and therefore at all relevant times was an SDNT. See Stansell, 8:09-cv-2308-T-26MAP, docket 650, ¶ 13. The motion was unopposed. On April 25, 2013, this

---

[4] Miriam Sutherlin is mentioned as a part owner of certain properties at issue in the Stansell case. See Stansell, 8:09-cv-2308-T-26MAP, docket 551, ¶ 1.

Court issued a judgment of turnover of the blocked assets and found that no other person or entity had ownership, beneficial interests, or rights in the blocked proceeds. See Stansell, 8:09-cv-2308-T-26MAP, docket 725, ¶ 11 (order).

In the Stansell case, JAMCE and the Plaintiffs here through Mr. Klugh quickly appealed and sought to stay the turnover judgment. See Stansell, 8:09-cv-2308-T-26MAP, docket 728 (notice of appeal) and docket 737 (motion to stay). Mr. Klugh appeared on behalf of the Plaintiffs here as "beneficial owners" as well as JAMCE. In denying the stay, this Court reasoned that, among other considerations, no objections were made before the TRIA turnover judgment was entered. See Stansell, 8:09-cv-2308-T-26MAP, docket 747 (order). The Eleventh Circuit affirmed the order on appeal as to JAMCE and held that the de-listing of an SDNT after the service of the writ on the garnishee "was ineffectual for determining whether the asset was blocked for TRIA § 201 purposes." See Stansell, 8:09-cv-2308-T-26MAP, docket 885 (opinion); Stansell, 771 F.3d at 733, 743-44.

## THEORIES OF LIABILITY

Plaintiffs allege five different claims for relief or theories for recovery: breach of fiduciary duty (Count I); breach of third-party beneficiary contract (Count II); breach of duty to notify (Count III); breach of duty to defend or indemnify (Count IV); and negligence (Count V). In the first count, Plaintiffs allege that Wells Fargo as trustee of the JAMCE Trust owed a fiduciary duty to them as beneficiaries of the trust, which it

breached in many ways. Wells Fargo failed to notify them that the JAMCE Trust either terminated in 2007, or it was never formed and the assets were transferred directly to a brokerage account, and that JAMCE was either dissolved or ceased to exist by early 2008, at which time the assets should have been distributed to them. Plaintiffs allege that after the settlor's death, "Wells Fargo liquidated the brokerage account and all other accounts [of JAMCE], and consolidated the resulting funds in an account in the Cayman Islands bank predecessor of Wells Fargo." See docket 58, ¶ 52. In 2008, Plaintiffs believe that "Wells Fargo conducted an electronic funds transfer (ETF) . . . of the beneficiaries' funds resulting from liquidation of [JAMCE] assets . . . to Wells Fargo's compliance branch in New York." See docket 58, ¶ 53. They claim that the ETF caused the funds to be held in some type of OFAC blocking account, not a true bank account in any person's name. See docket 58, ¶ 54. The movement of the funds outside the Cayman Islands was in contravention to the terms of the Trust deed according to Plaintiffs.

Regarding the breach of fiduciary duties, Plaintiffs allege that not only did Wells Fargo fail to notify them of the service of the writ of garnishment in the Stansell case, but Wells Fargo wrongfully "gave private banking information to the Stansell parties without notifying the Plaintiffs or obtaining their consent to release the private information." See docket 58, ¶ 34. Wells Fargo failed to indemnify and defend Plaintiffs against the writ of garnishment, and allegedly "failed to seek a hearing as contemplated under [the garnishment statute] to counter erroneous or incomplete assertions regarding the [JAMCE

Trust and JAMCE] . . . ." See docket 58, ¶ 35. Plaintiffs claim a valid defense to the garnishment in that the assets were not in the jurisdiction of this Court because they remained outside the State of Florida at the time the writ was served. See docket 58, ¶ 63. To this end, Plaintiffs allege that "any assets that may have once pertained to [JAMCE] were held by an independent subsidiary of Wells Fargo – the entity that succeeded First Union Bank and Trust Company (Cayman) Ltd. or First Union Brokerage Service, Inc. – at the time of their transfer to the United States." See docket 58, ¶ 62. Plaintiffs further assert that Wells Fargo should have answered that the funds in the account were owed to Plaintiffs, not JAMCE, and JAMCE did not or may never have existed. See docket 58, ¶¶ 62, 84. Finally, Plaintiffs allege that Wells Fargo should have amended its answer in 2012 to reflect that JAMCE was de-listed by the OFAC and acknowledged that it owed funds to Plaintiffs. See docket 58, ¶ 64.

The remaining counts seek relief on essentially the same allegations. The second count seeks relief based on breaches of written third-party beneficiary contracts that Plaintiffs claim are in the sole possession of Wells Fargo. Plaintiffs allege the breaches as "failing to properly establish or dissolve the Trust, failing to distribute the Trust assets to, or acknowledge ownership of the Trust assets by, the Plaintiffs upon termination of the Trust; failing to provide the Trustee or Trust Beneficiaries with notice of [the Stansell litigation and the discovery demands]; and failing to offer any defense whatsoever to the discovery requests and the writ of garnishment, including failing to accurately inform the

Plaintiffs and the court [of jurisdictional flaws]." See docket 58, ¶ 92. The third count seeks relief based on the breach of the duty to notify of the facts set forth above, arising from the duties owed by a bank holding the assets subject to the Trust deed. Plaintiffs claim in the fourth count the breach of the duty to defend and indemnify against the garnishment and the seizures of the trust assets, specifically that "Wells Fargo caused counsel retained by one of the beneficiaries to be conflicted from representation of [JAMCE], the [JAMCE Trust], or the beneficiaries when it wrongly notified the law firm Holland and Knight that it would deem representation of the beneficiaries' interests in the garnishment to conflict with the interests of Wells Fargo." See docket 58, ¶ 102. In the last count, Plaintiffs claim Wells Fargo was negligent in failing to exercise reasonable care in the management of JAMCE Trust, JAMCE, and any accounts or assets belonging to either as well as responding to service of court papers relating to the accounts. See docket 58, ¶ 104. Plaintiffs include all of the other duties articulated in the second amended complaint as duties giving rise to their claim for negligence.

## DISCUSSION

Defendant seeks to dismiss the second amended complaint based on failure to state a claim for relief in contravention of the Twombly-Iqbal standard.[5] In so doing, this Court may consider the documents filed in the prior, related case of Stansell, which is key to the premise of the claims that contest Wells Fargo's conduct in the garnishment

---

[5] Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); Bell Atl. Corp. v., Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

proceedings.  Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (holding that court need not convert motion to dismiss into summary judgment by taking judicial notice of public documents "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.") (citations omitted).  The public records of OFAC, which Plaintiffs contend required Wells Fargo to act in ways different than it did, may also be considered.  Universal v. Express, Inc. v. S.E.C., 177 F. App'x 52, 53 (11th Cir. 2006) (holding that court need not convert motion to dismiss into summary judgment by taking judicial notice of public records, relying on case accepting administrative notices issued by government agencies).

***Breach of Fiduciary Duty and Negligence (Counts I and V)***

Wells Fargo correctly argues neither the breach of fiduciary duties nor the negligence counts state claims for relief.  For each claim, Plaintiffs must establish the breach of a recognizable duty and proximate causation – that Wells Fargo's actions were the legal cause of the plaintiffs' injury.  See, e.g., Gracey v. Eaker, 837 So.2d 348, 353 (Fla. 2002) (fiduciary duty); Kenz v. Miami-Dade Cnty., 116 So.3d 461, 464 (Fla.Dist.Ct.App. 2013) (negligence).   Wells Fargo owed no duty to Plaintiffs to keep the JAMCE assets under the jurisdiction of the Cayman Islands because the trust deed, which is attached to the second amended complaint, allows Wells Fargo to move the JAMCE assets to the United States and to open an account with a U.S. investment advisor to invest, hold, and transfer assets.  See docket 58, trust deed ¶ 3.2 and Schedule B, ¶¶ A

(First Union National Bank as Investment Advisor) and (B)(1) (full discretion vested in Trustee, Investment Company and Investment Advisor). The trust deed selects the U.S. broker, First Union Brokerage Service, Inc., to engage in transactions on behalf of the JAMCE Trust, and gives Wells Fargo investment discretion in equal degree with the settlor, Abdala Saieh. See docket 58, trust deed ¶¶ 2.3 and 2.4, and Schedule B. Based on these facts, Wells Fargo was merely fulfilling its duties under the trust deed. Cf. Smith v. Casey, 2014 WL 11878422, at * 6-7 (S.D. Fla. 2014) (dismissing breach of fiduciary duty claim where defendant did not undertake duty beyond those duties already assumed).

Wells Fargo did not owe a legal duty to Plaintiffs to distribute the JAMCE assets upon the death of Abdala Saieh in 2007 because the assets were already blocked by the OFAC's designation of both JAMCE and Abdala Saieh, the settlor of the JAMCE Trust, as SDNTs as of November 28, 2006. Any distribution of such funds would have been unlawful. See 31 C.F.R. § 536.201(a) ("Prohibited transactions involving blocked property"); 50 U.S.C. § 1705 ("Penalties"). Wells Fargo properly complied with this Court's turnover order of April 25, 2013, directing that the garnishment funds, or blocked proceeds, be turned over to the plaintiffs in Stansell. See Stansell, 8:09-cv-2308-T-26MAP, at docket 725. A trustee's "duty of prudence . . . as under the common law of trusts, does not require a fiduciary to break the law." Fifth Third Bancorp. v. Dudenhoeffer, 573 U.S.—, 134 S.Ct. 2459, 2472, 189 L.Ed.2d 457 (2014) (citing

Restatement (Second) of Trusts § 166, Comment *a* ("The trustee is not under a duty to the beneficiary to do an act which is criminal or tortious.")).

Wells Fargo did not owe a duty to Plaintiffs to defend them against the pursuit of the turnover order. The trust deed provided sole and absolute discretion in Wells Fargo as trustee to settle any claim and to defend legal proceedings. See docket 58, trust deed ¶ 2.3.6. Even assuming Wells Fargo did owe a duty to defend Plaintiffs, they do not explain how that duty was breached in view of the blocked assets of JAMCE beginning in November 2006. There is no authority to support requiring Wells Fargo to recognize a change in ownership after the assets were blocked.

In addition to the absence of a recognizable duty, the claims for negligence and breach of fiduciary duty also fail on the basis of proximate cause. The legal, proximate cause of Plaintiffs' damages was the OFAC's blocking JAMCE assets and this Court's turnover judgment. Wells Fargo could not foresee that OFAC would block the JAMCE assets and therefore should have kept the assets outside the United States. Nor could it foresee that victims of narco-terrorists would garnish JAMCE assets and therefore should have sheltered the assets from judgment creditors. Chirillo v. Granicz, 199 So. 3d 246, 249 (Fla. 2016) (noting that foreseeability is relevant to proximate cause which asks "whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury"); Jaffe v. Bank of Am., N.A., 667 F.Supp. 2d , 1299, 1320 (S.D. Fla. 2009), aff'd, 395 F. App'x 583 (11th Cir. 2010) (noting that proximate cause is "defined

in terms of foreseeability."). These two independent, intervening causes to which Wells Fargo did not contribute interrupted any chain of causation.

Plaintiffs' assertion that Wells Fargo should have argued to this Court in the garnishment proceedings that the JAMCE assets were kept in a ledger account in a state outside of Florida and therefore not subject to *in rem* jurisdiction, is also unavailing. Plaintiffs and JAMCE appeared in the Stansell case but never raised this argument.[6] Had they made this argument in those proceedings, it would not have changed the fact that the assets were still blocked regardless of the location of the assets.

### *Breach of Third-Party Beneficiary Contract (Count II)*

Plaintiffs seeks damages for the breach of other "valid written contracts" entered into between Abdala Saieh and Wells Fargo for the benefit of trust beneficiaries, which they believe to be in the sole possession of Wells Fargo. The alleged breaches are the same breaches alleged for violation of the trust deed – failure to either establish or dissolve the JAMCE trust, failure to distribute its assets, failure to provide notice to Plaintiffs of the Stansell litigation and discovery requests, and failure to offer a defense to the litigation and discovery requests. These allegations do not make sense because any alleged separate contracts would not impose the exact same, redundant obligations and

---

[6] The Eleventh Circuit held that JAMCE "waived any opposition to [Stansell's and others'] motion seeking entry of judgment on the writ of garnishment when, after receiving notice of the motion through counsel, it failed to timely respond to the motion." Stansell, 771 F.3d at 744. The turnover order was affirmed because JAMCE "waived opposition to the motion seeking" the turnover order. Stansell, 771 F.3d at 744.

duties as the trust deed. Under Florida law, the violation of a trust provision does not in and of itself give rise to a breach of contract claim. Cf. Sanders v. Citizens Nat'l Bank of Leesburg, 585 So. 2d 1064, 1065 (Fla.Dist.Ct.App. 1991) (affirming dismissal of breach of contract claim and reasoning that "creation of trust . . . is essentially a conveyance, rather than a contract"). Had Plaintiffs successfully alleged breaches arising from contract provisions different from those of the trust deed, the fact remains that the assets were blocked by the OFAC. "[A] party's contractual obligation is discharged when the party's performance of the contract is prevented by governmental order." Leon Cnty. v. Gluesenkamp, 873 So. 2d 460, 463 (Fla.Dist.Ct.App. 2004) (citation omitted).

### ***Breach of Duty to Notify and Duty to Indemnify (Counts III and IV)***

Florida law does not provide a cause of action for breach of a duty to notify or a duty to indemnify, without more, on behalf of a trustee. Under Florida law, the duties to defend or indemnify may arise contractually and are determined from the language of the contract and the circumstances in which it was made. See Fid. & Guar. Ins. Co. v. Ford Motor Co., 707 F.Supp. 2d 1300, 1313 (M.D. Fla. 2010). There is no common law duty to indemnify. See Ford Motor, 707 F.Supp. 2d at 1315. Generally, the duty to defend and indemnify arise in the context of an insurer under an insurance policy. See, e.g., Meridian Constr. & Dev., LLC v. Admiral Ins. Co., 105 F.Supp. 2d 1331 (M.D. Fla. 2013). Plaintiffs have failed to allege a valid basis to substantiate a claim for relief for either breach of a duty to notify or breach of the duty to defend or indemnify.

As a final note, no mention was made in the <u>Stansell</u> matter by JAMCE's attorney that Wells Fargo should defend or represent JAMCE in that proceeding. Apart from such an omission, it cannot be overlooked that JAMCE's attorney now takes a contrary position that JAMCE may never have been formed and therefore may never have existed. Wells Fargo surely had no duty to raise any defenses in the garnishment proceedings on behalf of a nonexistent entity. Nevertheless, JAMCE waived any objections to the turnover judgment by failing to raise any of these issues in those proceedings.

It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss (Dkt. 59) is **GRANTED.** The Clerk is directed to enter judgment for Defendants, to terminate any pending motions or deadlines, and to **CLOSE** this case.

**DONE AND ORDERED** at Tampa, Florida, on March 8, 2018.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record